IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KEVIN RIVERS                                                    PLAINTIFF


           v.                          CIVIL NO. 10-5257


MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                  DEFENDANT


**MEMORANDUM OPINION**

Plaintiff, Kevin Rivers, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff protectively filed his current applications for DIB and SSI on May 9, 2008, alleging an inability to work since October 2, 2007, due to the residuals from a back fusion, six herniated disks, blood clots, memory loss, and fatigue. (Tr. 111, 115, 132). An administrative hearing was held on July 9, 2009, at which Plaintiff appeared with counsel and testified. (Tr. 15-45).

By written decision dated December 31, 2009, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 55).

AO72A
(Rev. 8/82)

Specifically, the ALJ found Plaintiff had the following severe impairments: degenerative disk disease of the thoracic spine; deep vein thrombosis (DVT); and obesity.  However, after reviewing all of the evidence presented, she determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4.  (Tr. 56).  The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant can only occasionally balance, kneel, crouch, crawl, stoop, and climb ladders, ropes, scaffolds, ramps, stairs.  In addition, the claimant can reach in all directions frequently.

(Tr. 56).  With the help of a vocational expert, the ALJ determined that Plaintiff could perform work as a production worker, a credit authorizer, and an interviewer/charge account clerk.  (Tr. 60).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on November 9, 2010.  (Tr. 1-3).  Subsequently, Plaintiff filed this action.  (Doc. 1).  This case is before the undersigned pursuant to the consent of the parties. (Doc. 5).  Both parties have filed appeal briefs, and the case is now ready for decision.  (Docs. 7,8).

**II.     Evidence Presented:**

At the time of the administrative hearing held before the ALJ on July 9, 2009, Plaintiff, who was forty-three years of age at that time, testified that he obtained a twelfth grade education.  (Tr. 20).  Plaintiff testified that he filed for unemployment benefits in April of 2007, and drew benefits for about one year.  (Tr. 21-22).  The record reflects Plaintiff's work consists of factory work.

The medical evidence dated prior to the relevant time period reveals that Plaintiff sought treatment for back pain and subsequently underwent surgery, lower chest pain, a thyroid problem, a headache, a right middle finger laceration, and a left wrist contusion.  (Tr. 321-329, 332-337, 343-354,

AO72A
(Rev. 8/82)

383-385, 391-402 ,412-418, 442-472).  Plaintiff was also noted to have disk herniation at T4-T6, disk bulging at T9-T11, and a small hiatal hernia.  (Tr. 291-294).

The medical evidence during the relevant time period reflects the following.  On March 24, 2008, Plaintiff was admitted into Northwest Medical Center after complaining of shortness of breath and dizziness.  (Tr. 209-223, 235-236, 282-286,355-356, 358-362, 403-404).  Plaintiff reported that he had been experiencing these symptoms for about one month.  At the time of admission, Plaintiff denied arthralgias or myalgias, but reported leg pain while ambulating.  Plaintiff was noted to smoke two packages of cigarettes per day.  Plaintiff underwent testing and it was determined that Plaintiff should undergo an outpatient sleep study and a thirty day event recorder.  Plaintiff was also instructed to follow a no salt diet and to exercise. Plaintiff was discharged home on March 25th, in stable condition.  At the time of discharge, Plaintiff's medications consisted of Aspirin, Coreg, Hydrochlorothiazide, and Levothyroxine.

On April 5, 2008, Plaintiff was admitted into Northwest Medical Center with complaints of right leg pain.  (Tr. 224-238, 241-242, 249-250, 261-262, 269-270, 279-281, 338-340, 386-388).  While in the emergency room, Plaintiff was found to have DVT in his right lower extremity.  Plaintiff was started on Heparin and Coumadin.  Plaintiff was noted to ambulate independently, and to perform all activities of daily living without assistance.  A few days after admission, Plaintiff complained of shortness of breath and feeling light headed.  A CT Pulmonary Angiogram revealed pulmonary emboli in all five lobes.  Plaintiff was discharged on April 14, 2008, with the diagnoses of right lower extremity deep venous thrombosis; pulmonary embolism; and hypertension.  Plaintiff was to follow-up with Dr. Hull within three days.

AO72A
(Rev. 8/82)

On April 16, 2008, Dr. Robert Hull noted that Plaintiff was doing "relatively well." (Tr. 318, 409). Dr. Hull noted that Plaintiff had been hospitalized for about nine days for a blood clot in his right leg that went into his lungs. Dr. Hull noted Plaintiff had been doing a lot of traveling prior to his hospitalization, and he opined that Plaintiff's blood clots were due to all of Plaintiff's sitting. Dr. Hull recommended that Plaintiff start taking medication for high blood pressure. Dr. Hull noted that Plaintiff had not had any shortness of breath or chest pain, and that everything else looked good. Dr. Hull diagnosed Plaintiff with right leg DVT and hypertension.

On May 1, 2008, Plaintiff presented to the Northwest Medical Center emergency room complaining of leg pain and shortness of breath. (239-240, 243-248, 251-255, 258-260, 263-268, 271-278, 341-342, 389-390). At that time, Plaintiff was negative for back pain and cramps, but positive for extremity pain. Plaintiff was examined and diagnosed with pulmonary embolus, polycytemia,[1] and DVT of the right leg. Plaintiff was discharged home in stable condition. Plaintiff was to follow-up with Dr. Hull in two days.

On May 12, 2008, Dr. Hull noted that Plaintiff might be a candidate for a filter for his thrombus. (Tr. 317, 408). Dr. Hull noted that Plaintiff's leg was feeling better, but that Plaintiff did not have good breathing. Dr. Hull recommended that Plaintiff be seen by a cardiovascular surgeon.

On May 14, 2008, Plaintiff presented to Dr. Mary E. Bourland to see if Plaintiff should undergo an inferior vena cava (IVC) filter placement. (Tr. 295-296). Plaintiff was noted to move all extremities equally without edema, redness or tenderness. Dr. Bourland recommended Plaintiff be admitted on May 20th, and if all test results were okay, Plaintiff would undergo the IVC filter placement on May 21st.

---

[1]Polycytemia is defined as an increase in the total red cell mass of the blood. See Dorland's Illustrated Medication, Dictionary at 1510, 31st Edition (2007).

-4-

On May 20, 2008, Plaintiff was admitted into Mercy Medical Center to undergo the IVC filter placement. (Tr. 297-315). Upon admission, Plaintiff's active problems were listed as unspecified backache, pulmonary embolism, and DVT. After undergoing the IVC filter placement, Plaintiff developed right testicular pain, and he was diagnosed with right epidydimitis.[2] Plaintiff was discharged on May 23rd, with the diagnoses of pulmonary embolism, right leg DVT, and epidydimitis.

Treatment notes dated May 27, 2008, reported that Dr. Bourland wanted Dr. Hull to manage Plaintiff's Coumadin levels, and the medical evidence showed that Dr. Hull monitored Plaintiff's levels. (Tr. 316, 376-382, 404-407, 421-428).

On June 13, 2008, Dr. Alice M. Davidson, a non-examining medical consultant, completed a RFC assessment stating that Plaintiff could occasionally lift or carry ten pounds, frequently less than ten pounds; could stand and/or walk for at least two hours in an eight-hour workday; could sit for a total of about six hours in an eight-hour workday; and could push or pull unlimited, other than as shown for lift and/or carry. (Tr. 367-374). Dr. Davidson opined Plaintiff could occasionally climb, balance, stoop, kneel, crouch and crawl. Dr. Davidson noted that manipulative, visual, communicative or environmental limitations were not evident. On August 14, 2008, after reviewing additional medical records, Dr. Bill F. Payne affirmed Dr. Davidson's June 13, 2008 assessment. (Tr. 440).

On August 5, 2008, Plaintiff entered the Northwest Medical Center emergency room complaining of right knee pain. (Tr. 429-437, 486-496, 516). Plaintiff was negative for shortness of breath or chest pain. Upon examination, Plaintiff's respiratory effort was noted as unlabored. Plaintiff's right knee range of motion was normal without pain. Plaintiff underwent a right lower extremity venous duplex

---

[2]Epidydimitis is defined as an inflammation of the epididymis which is the elongated cord-like structure along the posterior border of the testis. See Dorland's Illustrated Medication, Dictionary at 638, 31st Edition (2007).

-5-

study that was negative for DVT.  (Tr. 492).  Plaintiff was diagnosed with right knee pain, and discharged home in stable condition.

On August 7, 2008, Plaintiff was seen by Dr. Hull for his right knee pain.  (Tr. 420).  Plaintiff reported experiencing this pain for the last six months.  Plaintiff reported that it was an "on and off again thing."  Dr. Hull noted that this was the same leg that had the blood clot for which Plaintiff was on Coumadin.  Dr. Hull noted that Plaintiff had been examined in the emergency room by a Dr. Akins, who felt that it was a knee and cartilage problem.  Plaintiff reported his knee felt unstable when walking. Plaintiff was diagnosed with right knee pain and referred to orthopedic services.

On March 19, 2009, Plaintiff was admitted into Northwest Medical Center after complaining of groin pain.   (Tr. 498-531).  Plaintiff reported the pain had progressively worsened for the past week. Treatment notes indicated that Plaintiff had a good support system, that Plaintiff was able to ambulate independently, and that Plaintiff was able to perform all activities of daily living without assistance. Plaintiff's medications consisted of Lisinopril, Synthroid, Coumadin.  Upon examination, Dr. Matt Walter noted Plaintiff had a moderate amount of soft tissue swelling with 2+ edema in the lower extremities, the right worse than the left. A non-invasive Doppler study of Plaintiff's right lower extremity was normal, with no evidence of thromboembolic disease.  Plaintiff was prescribed Ciprofloxacin, and given twenty Acetaminophen/Hydrocodone.  Plaintiff was discharged on the same date with a diagnosis of acute epididymitis.

On March 30, 2009, Plaintiff was seen at Benton County Surgical Associates.  (Tr. 533-539). Plaintiff's problems were listed as unspecified backache, a massive pulmonary embolism, and DVT. Plaintiff reported he smoked one and one-half packages of cigarettes a day.  Dr. Douglas A. Treptow noted that Plaintiff had been referred by Dr. Bumpers due to Plaintiff's right lower quadrant abdominal

-6-

pain for the past two months.  After examining Plaintiff, Dr. Treptow assessed Plaintiff with right groin

pain with no evidence of herniation-rule out muscle strain verus radiculopathy from the degenerative

disease of his back; progressive constipation with sigmoid diverticulosis noted on the CT scan; deep vein

thrombosis with inferior vena cava filter in place-on chronic Coumadin anticoagulation; hypertension;

hypothyroidism; history of multiple pulmonary emboli; and obesity.  Dr. Treptow opined that Plaintiff

most likely had muscle strain or perhaps radiculopathy related to the degenerative disc disease.  Dr.

Treptow noted that Plaintiff might need an evaluation by a back surgeon.  Dr. Treptow recommended

limiting Plaintiff's activity and not doing any activity that might aggravate his symptomatology.

On June 10, 2009, Plaintiff called Dr. Hull's office requesting a Coumadin medication re-fill

because he was getting ready to go out of town.  (Tr. 475).

### III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by

substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002).

Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it

adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record

contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).  As

long as there is substantial evidence in the record that supports the Commissioner's decision, the Court

may not reverse it simply because substantial evidence exists in the record that would have supported

a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari,

258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw

two inconsistent positions from the evidence and one of those positions represents the findings of the

ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

AO72A
(Rev. 8/82)

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**IV.    Discussion:**

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled.  Defendant argues substantial evidence supports the ALJ's determination.

-8-

### A.     Plaintiff's Impairments:

The ALJ found that Plaintiff had the following severe impairments: degenerative disk disease of the thoracic spine; deep vein thrombosis; and obesity.  However, the ALJ found that Plaintiff's alleged memory loss was not a severe impairment.  (Tr. 55).

In finding that Plaintiff's alleged memory loss was not a severe impairment, the ALJ noted that Plaintiff indicated in a Function Report dated June 2, 2008, that his doctor informed him that blood clots can cause a lack of blood flow which might cause memory loss or poor concentration.  (Tr.  55, 163).  The ALJ found that neither Plaintiff's testimony nor the medical evidence supported a finding that Plaintiff's alleged memory loss caused more than minimal limitations with Plaintiff's ability to perform basic work activities.  A review of the medical evidence fails to show that Plaintiff complained of memory loss problems to his treating physicians.  After reviewing the entire evidence of record, the Court finds substantial evidence to support the ALJ's finding that Plaintiff's memory loss is not a severe impairment.

### B.     Subjective Complaints and Credibility Analysis:

We now address the ALJ's assessment of Plaintiff's subjective complaints.  The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone

-9-

is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints.  Although Plaintiff contends that his impairments were disabling, the evidence of record does not support this conclusion.

With regard to Plaintiff's back impairment, the medical evidence revealed that Plaintiff underwent back surgery prior to the relevant time period, and that Plaintiff was found to have disk herniation at T4-6, and disk bulging at T9-11.  The medical evidence during the relevant time period showed that while Plaintiff sought treatment for other alleged impairments, Plaintiff did not consistently report having severe back problems.  In fact, in April of 2008 Dr. Hull's treatment notes addressing Plaintiff's recent treatment for blood clots failed to indicate Plaintiff was having difficulty with his back, as Dr. Hull reported that "everything else looked good."  The medical evidence showed that on May 1, 2008, Plaintiff denied back pain; and when Plaintiff was admitted to undergo the IVC filter placement on May 20, 2008, Plaintiff was noted to have an unspecified backache.  The medical evidence does not show that Plaintiff was taking medication to treat this "backache" at that time.  There is little to no indication that Plaintiff sought treatment for his alleged disabling back pain until March of 2009, when Plaintiff was referred to Dr. Treptow regarding his abdominal pain.  After examining Plaintiff, Dr. Treptow opined that Plaintiff might have muscle strain or perhaps radiculopathy due to his degenerative disc disease.  However, there is no medical evidence to show that Plaintiff sought treatment for back pain after March of 2009, or that Plaintiff complained of numbness, tingling or weakness.  Thus, while Plaintiff may indeed experience some degree of pain due to his back impairment, the Court finds substantial evidence of record supporting the ALJ's finding that Plaintiff does not have a disabling back

-10-

impairment. See Lawrence v. Chater, 107 F.3d 674, 676 (8th Cir. 1997) (upholding ALJ's determination that claimant was not disabled even though she had in fact sustained a back injury and suffered some degree of pain).

With regard to Plaintiff's pulmonary emboli and DVT of the right leg, the medical evidence revealed that Plaintiff was placed on Coumadin therapy and that Plaintiff also had an IVC filter placement. In April of 2008, Dr. Hull noted Plaintiff was doing "relatively well." It is also noteworthy that in August of 2008, Plaintiff underwent a right lower extremity venous duplex study that was negative for deep vein thrombosis. While the medical evidence clearly shows that Plaintiff will be continued on Coumadin therapy for the rest of his life, the Court finds substantial evidence to support the ALJ's determination that these impairments were not disabling during the relevant time period.

With regard to Plaintiff's right knee impairment, the medical evidence revealed that Plaintiff sought treatment for right knee pain on August 5 2008. At that time, Plaintiff was noted to have normal range of motion of the right knee without pain. Plaintiff followed up with Dr. Hull on August 7, 2008, and reported that his knee pain had been an "on and off again thing" for the past six months. Dr. Hull diagnosed Plaintiff with right knee pain and referred Plaintiff to see an orthopedic doctor. In March of 2009, when Plaintiff sought treatment for groin pain he was noted to be able to ambulate independently and did not complain of right knee pain. Based on the record as a whole, the Court finds substantial evidence to support the ALJ's determination that Plaintiff did not have a disabling knee impairment.

As for Plaintiff's obesity, the Court notes that Plaintiff did not allege obesity in his application and did not testify to any limitations caused by his obesity at the administrative hearing. See Thompson v. Astrue, 2007 WL 601596, *2 (8th Cir. 2007) (holding that the ALJ did not err in failing to obtain the testimony of a VE where the claimant failed to claim obesity as a disabling condition).

-11-

Plaintiff's subjective complaints are also inconsistent with evidence regarding his daily activities. At the administrative hearing before the ALJ on July 9, 2009, Plaintiff testified that in early 2008, he drove back and forth to Nebraska to bring his grandfather to see his mom. (Tr. 25). Plaintiff testified that he would drive the six and one-half hours to Nebraska one day, and then turn around and drive back the next day. Plaintiff testified he made this trip two to three times in a four to five month period. Plaintiff testified that he also drove his son the seven miles to football practice daily, and that he would sometimes just wait the hour at the school until the practice was over. (Tr. 29). Plaintiff also indicated in a Function Report dated June 2, 2008, that he was able to help take care of the family dog; take care of his personal hygiene needs; prepare simple meals; do some household chores; drive a car alone; shop for groceries, clothes, and household necessities; and visit with friends and family. (Tr. 156-163). The medical records also consistently noted that Plaintiff was able to perform all activities of daily living without assistance. The Court would also point out that in June of 2009, Plaintiff called into Dr. Hull's office trying to get a medication re-fill early because he was preparing to be out of town. (Tr. 475). This level of activity belies Plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a Plaintiff's subjective allegations of disabling pain. Cruze v. Chater, 85 F.3d 1320, 1324 (8th Cir.1996) (the ability to care for animals, shop, do odd jobs and visit town tends to prove claimant was able to work).

At the administrative hearing, upon questioning by the ALJ, Plaintiff testified that he received unemployment benefits in April of 2008, and continued to receive them for around one year. (Tr. 21-22). The Court notes "[a] claimant may admit an ability to work by applying for unemployment compensation benefits because such an applicant must hold himself out as available, willing and able to work." Jernigan v. Sullivan, 948 F.2d 1070, 1074 (8th Cir.1991).

-12-

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, he has not established that he is unable to engage in any gainful activity.  Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### C.    RFC Assessment:

We next turn to the ALJ's assessment of Plaintiff's RFC. RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record.  Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In finding Plaintiff able to perform sedentary work with limitations, the ALJ considered Plaintiff's subjective complaints, the medical records of his treating and examining physicians, and the evaluations of the non-examining medical examiners.  Plaintiff's capacity to perform this level of work is supported by the fact that the medical evidence does not indicate that Plaintiff's examining physicians placed restrictions on his activities that would preclude performing the RFC determined. See Hutton v. Apfel,

-13-

175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination.

        **D.**        **Hypothetical Question to the Vocational Expert:**

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing work as a production worker, a credit authorizer, and an interviewer/charge account clerk. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**V.**        **Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

        DATED this 12th day of March 2012.

                    /s/ *Erin L. Setser*

                    HON. ERIN L. SETSER
                    UNITED STATES MAGISTRATE JUDGE

**AO72A**
**(Rev. 8/82)**